# In the United States Court of Federal Claims

No. 19-586C

(Filed: July 29, 2019)

**(NOT TO BE PUBLISHED)**

|  |  |
|---|---|
| **JUSUFU D. ALI,** | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| **UNITED STATES,** | ) ) ) |
| Defendant. | ) ) |

Jusufu D. Ali, *pro se*, Charlotte, North Carolina.

Margaret J. Jantzen, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the brief were Joseph H. Hunt, Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Senior Judge.

Plaintiff Jusufu D. Ali, also known as Jusufu NouNou Haines and Jusufu NouNou-Dukuly Ali, has brought suit seeking unspecified damages pursuant to the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692-92p, and the Fourteenth Amendment to the U.S. Constitution. Mr. Ali cites attempts by the Bank of America, The Bank of New York Mellon, and Select Portfolio Servicing to collect an escrow account debt on Mr. Ali's mortgage. Compl. at 3, ECF No. 1.[1] Mr. Ali also alleges a breach of contract by the United States for attempts to collect that debt after allegedly agreeing that the debt had been paid. Compl. at 2. The United States (the "government") has moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"), arguing that this court lacks jurisdiction over the claim and that Mr. Ali has failed to state a claim upon which this court can grant relief. *See* Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 8.

---

[1]Citations to the complaint correspond to the page marking as reproduced in the Electronic Case Filing system.

In support of his claims, Mr. Ali provided five exhibits in a supplemental filing (collectively, "Exhibits"). [Pl.'s Suppl.] Exs. ("Exs."), ECF No. 7.[2] These exhibits consist of mortgage statements, collection letters, and a "private bond" created by Mr. Ali and sent to the U.S. Department of the Treasury ("Treasury") purportedly in satisfaction of his debts. Exs. at 2, 6 (loan discharge letters and payment vouchers created by Mr. Ali), 3 (confirmation of delivery to the Treasury), 4-5 ("private bond" created by Mr. Ali and letter of explanation to the Treasury), 8-11, 14 (mortgage statements), 12-13, 16-18 (collection letters), 15 (assignment of mortgage).[3]

Because this court lacks subject-matter jurisdiction over the claims, and because Mr. Ali has failed to state a claim upon which this court can grant relief, the government's motion to dismiss Mr. Ali's complaint is GRANTED.

## BACKGROUND

Mr. Ali had a 30-year adjustable-rate mortgage with Bank of America that had nearly 24 years remaining as of November 2010. *E.g.*, Exs. at 13. Bank of America informed Mr. Ali in November 2010 that his mortgage was in default because he failed to make full payment of the October 2010 payment, that Bank of America intended to accelerate his payments due to default, and that he could cure the default by paying $2,004.42 in addition to the next regular monthly payment. Exs. at 8. Another letter in November 2010 from Bank of America projected an escrow shortage of $1,007.16 by the end of 2011, assuming timely full payments throughout 2011, and increased the monthly escrow payment for 2011 by approximately $50. Exs. at 10-11.

Also in November 2010, Mr. Ali sent a letter to the Treasury that purported to be a "Private Bond" for $100 billion and authorized by "HJR 192 and the UNCITRAL Convention." Exs. at 4-5; *see also* Exs. at 2.[4] He asked the Treasury to deposit this "bond" into an account on

---

[2]Though identified as exhibits, the pages submitted by Mr. Ali were not identified by exhibit number. Citations to the exhibits correspond to the page marking as reproduced in the Electronic Case Filing system.

[3]The bond was issued by Jusufu NouNou Haines, who appears to be Mr. Ali. *See* Exs. at 2, 5.

[4]"HJR 192" refers to a joint resolution of June 5, 1933, which declared, among other things, that any clause that gives a right to demand "payment in gold or a particular kind of coin or currency [is] against public policy" and allowed payment of any obligation by legal tender. H.J.R. Res. 192, § 1, 73d Cong. (1933), 48 Stat. 112, 113. Some people have argued that this joint resolution, among other things, requires the government to discharge any personal debts. For a fee, online purveyors will provide more detailed advice and spurious legal forms. Unsurprisingly, debt relief claims based on "HJR-192 have been universally rejected by every federal court that has been presented with this theory." *Estes v. Toyota Fin. Serv.*, No. 14-CV-1300, 2015 WL 222137, at *5 (E.D.N.Y. Jan. 13, 2015) (collecting cases); *see also Gravatt v. United States*, 100 Fed. Cl. 279, 283, 286-88 (2011) (discussing, and rejecting, the underlying theory).

his behalf "to be used as a set off account against any bills, taxes, or claims" against him, and once his accounts were settled, to "return the interest" to him. Exs. at 4. The letter also stated that the Treasury had 30 days in which to disavow the bond or it would be deemed as accepted. Exs. at 4. Mr. Ali also provided three Internal Revenue Service ("IRS") Form 1040-V payment vouchers, Exs. at 6, which a taxpayer prepares and sends to the IRS to make a payment in the amount listed on the voucher, see, e.g., Dep't of the Treasury, Internal Revenue Serv., 2018 Form 1040-V, https://www.irs.gov/pub/irs-pdf/f1040v.pdf. The vouchers were for $121,839.80, $1,007.16, and $2,004.42, Exs. at 6, seemingly relating to the mortgage principal balance as of November 2010, estimated escrow deficit by the end of 2011, and the overdue October 2010 balance, respectively, Exs. 8, 10, 12. The Treasury does not appear to have responded.

In a letter dated December 17, 2010, Mr. Ali notified Bank of America via letter of the bond and payment vouchers submitted to the Treasury during the prior month, in an apparent attempt to satisfy his obligations. Exs. at 2. At some point circa December 2010, Bank of America assigned the mortgage to The Bank of New York Mellon. Exs. at 14 (showing loan paid-off to Bank of America in January 2011), 15 (showing assignment of deed of trust filed in California in February 2012). A January 2011 letter from Bank of America showed no mortgage balance owed to it, but an escrow deficit of $1,500.11. Exs. at 14; see also Exs. at 13. Mr. Ali apparently believes that the January 2011 letter evidences that the Treasury and Bank of America accepted his bond, "which led to payoff and settlement" of the debt. Compl. at 2.

In January 2019, Select Portfolio Servicing mailed Mr. Ali a statement indicating that he was more than 3,000 days delinquent on this mortgage and sought payment of the outstanding debt. Exs. at 16. In addition to $121,839.80 in principal owed, Select Portfolio Servicing also sought approximately $90,000 in interest, taxes, and fees. Exs. at 16.

## STANDARDS FOR DECISION

### A. Rule 12(b)(1) – Lack of Subject-Matter Jurisdiction

The Tucker Act provides this court with jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). To invoke this court's Tucker Act jurisdiction, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc* in relevant part) (citing *United States v. Mitchell*, 463 U.S.

---

"UNCITRAL" refers to the United Nations Commission on International Trade Law. It has provided a forum for negotiation of several conventions, although presumably Mr. Ali is referring to the 1988 Convention on International Bills of Exchange and International Promissory Notes. The United States is one of eight signatories to the Convention, but has not ratified the Convention. *See* United Nations Comm'n on Int'l Trade Law, Status: United Nations Convention on Int'l Bills of Exch. & Int'l Promissory Notes (1988), https://uncitral.un.org/en/texts/payments/conventions/bills_of_exchange/status (last visited July 26, 2019). The Convention is not in effect as to any signatory because only five of the requisite 10 member states have ratified the Convention. *Id.*

206, 216 (1983); *United States v. Testan*, 424 U.S. 392, 398 (1976)). If a plaintiff fails to do so, this court "should [dismiss] for lack of subject matter jurisdiction." *Jan's Helicopter Serv., Inc. v. Federal Aviation Admin.*, 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting *Greenlee Cty. v. United States*, 487 F.3d 871, 876 (Fed. Cir. 2007)).

A claim in this court is "barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. This six-year statute of limitations is jurisdictional and is not susceptible to equitable tolling or any of the other doctrines that would excuse an untimely claim. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134-38 (2008).

Mr. Ali, as plaintiff, must establish jurisdiction by a preponderance of the evidence. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)).[5] When ruling on a motion to dismiss for lack of jurisdiction, the court must "accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)). When facts going to jurisdiction are disputed, the court "may weigh relevant evidence." *Mildenberger v. United States*, 643 F.3d 938, 944 (Fed. Cir. 2011) (quoting *Ferreiro v. United States*, 350 F.3d 1318, 1324 (Fed. Cir. 2003)). "If a court lacks jurisdiction to decide the merits of a case, dismissal is required as a matter of law." *Gray v. United States*, 69 Fed. Cl. 95, 98 (2005) (citing *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868); *Thoen v. United States*, 765 F.2d 1110, 1116 (Fed. Cir. 1985)); *see also* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### B. Rule 12(b)(6) – Failure to State a Claim Upon Which Relief Can Be Granted

To survive a motion to dismiss under RCFC 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual matters alleged "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56 (citations omitted).

When reviewing the complaint, "the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing *Papasan v. Allain*, 478 U.S. 265, 283 (1986) (additional citation omitted)). Conclusory statements of law and fact,

---

[5] A court may "grant the *pro se* litigant leeway on procedural matters, such as pleading requirements." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) ("An unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims.")). But this leniency cannot extend to lessening jurisdictional requirements. *See Kelley v. Secretary, United States Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[A] court may not . . . take a liberal view of . . . jurisdictional requirement[s] and set a different rule for *pro se* litigants only.").

4

however, "are not entitled to the assumption of truth" and "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "'[N]aked assertions[s]' devoid of 'further factual enhancement'" are insufficient to state a claim. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557); *accord Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

## ANALYSIS

Mr. Ali argues that jurisdiction is proper because of diversity of citizenship and because he avers violations of federal laws. Compl. at 1 (invoking "diversity jurisdiction" and "'federal question' jurisdiction"). The government argues that this court lacks jurisdiction for several reasons. First, the government notes that this court's general jurisdiction derives from the Tucker Act, not from diversity of citizenship nor the presence of a federal question. Def.'s Mot. at 2. Second, the government argues that this court lacks jurisdiction over the Due Process Clause of the Fourteenth Amendment. Def.'s Mot. at 2. Third, the government contends that this court lacks jurisdiction to hear claims under the Fair Debt Collection Practices Act. Def.'s Mot. at 3. Fourth, the government argues that although Mr. Ali names the government as a defendant, he adduces no facts that would implicate the government in any of his claims. Def.'s Mot. at 3-4. Independently of jurisdictional defects, the government avers that Mr. Ali fails to state a breach of contract claim because Mr. Ali identifies no contract and pleads none of the elements necessary to find that a contract exists. Def.'s Mot. at 3.

The presence of a federal question or diversity of citizenship between parties provides a jurisdictional basis for federal district courts, not for this court. *See* 28 U.S.C. §§ 1331, 1332, 1491. This court's general jurisdiction arises under the Tucker Act, under which this court can hear claims against the United States, and only claims for monetary compensation, resulting from a breach of contract with the federal government or from a violations by the federal government of constitutional, statutory, or regulatory law, excluding tort cases. 28 U.S.C. § 1491(a). Accordingly, this court may not consider claims against private parties or against a state or its instrumentalities. 28 U.S.C. § 1491(a); *see also, e.g.*, *Bowles v. United States*, 639 Fed. Appx. 647 (Fed. Cir. 2016) (no jurisdiction over a state or its instrumentalities); *Arunga v. Clinton*, 77 Fed. Cl. 120, 124-25 (2007) (no jurisdiction over disputes between private parties).

While Mr. Ali's designates the United States as the defendant, none of the facts he presents regarding debt collection implicate the United States. Neither The Bank of New York Mellon nor Select Portfolio Services are a part of, or an agent of, the United States government. Both are private parties, and thus neither are proper defendants before this court.[6] Similarly, the Bank of America is not a proper defendant. While its name may suggest some relationship with the United States government, the Bank of America is a private business owned by private

---

[6]The Bank of New York Mellon, Inc. is incorporated under the laws of Delaware. *See* Del. Dep't of State, Div. of Corps., Entity Details: Bank of New York Mellon Corporation, https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx (last visited July 24, 2019) (File No. 4299124). Select Portfolio Servicing is incorporated under the laws of Utah. *See* Utah Div. of Corps. & Commercial Code, Business Search: Select Portfolio Servicing, Inc., https://secure.utah.gov/bes/details.html?entity=1026229-0142 (last visited July 25, 2019).

investors and incorporated under the laws of Delaware.[7] It has no relation to the U.S. government or the Department of the Treasury. Aside from a possible breach of contract claim alleged against the Treasury, all the entities against which Mr. Ali complains are private entities, and thus this court lacks subject matter jurisdiction to hear claims against them. *E.g.*, 28 U.S.C. § 1491(a); *Arunga*, 77 Fed. Cl. at 124-25. Mr. Ali adduces no facts that indicate that the United States has any involvement in the attempts to collect any debt from him, or that he even owes a debt to the United States; all entities identified in his complaint and exhibits whom seek to collect a debt are private entities seeking to collect a private debt, none of whom bear any connection to the United States government.

Mr. Ali also alleges that agents of the United States violated Section 1 of the Fourteenth Amendment. Compl. at 1. Aside from the fact that the United States has taken no action against Mr. Ali, "not every claim invoking the Constitution . . . is cognizable under the Tucker Act. The claim must be one for money damages against the United States." *Mitchell*, 463 U.S. at 216. The Fourteenth Amendment does not mandate payment by the United States; it applies only with relation to the states, not the federal government. *See* Const. Amend. XIV § 1 ("No State shall . . ., nor shall any State . . .").

This court also lacks jurisdiction to hear claims invoking the Fair Debt Collections Practices Act. "An action to enforce any liability [against a debt collector] may be brought in any appropriate United States district court . . . or any other court of competent jurisdiction, within one year form the date on which the violation occurs." 15 U.S.C. § 1692k(d). Because Mr. Ali could "pursue in court the monetary relief contemplated by the statute" "[w]ithout resort to the Tucker Act," the Fair Debt Collections Practices Act displaces the Tucker Act and thus deprives this court of jurisdiction. *See United States v. Bormes*, 568 U.S. 6, 15 (2012) (finding language in the Fair Credit Reporting Act, 15 U.S.C. § 1681p, that provided "jurisdiction will lie 'in any appropriate United States district court, . . . or [] any other court of competent jurisdiction,'" displaced Tucker Act jurisdiction).[8]

What remains is Mr. Ali's breach of contract claim, in which he suggests that the Treasury, after accepting his $100 billion "Private Bond" in late 2010 as a set-off for his debt,

---

[7]*See* Del. Dep't of State, Div. of Corps., Entity Details: Bank of America Corporation, https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx (last visited July 24, 2019) (File No. 2927442). Among its many subsidiaries is Bank of America, N.A. Bank of Am. Corp., [Sec. & Exch. Comm'n] Form 10-K [Annual Report for fiscal year 2017], Ex. 21 (2018). BAC Home Loans Servicing, LP, which appears in an exhibit provided by Mr. Ali, *see* Exs. at 8, merged into Bank of America, N.A. in 2011, *see, e.g.*, letter from Stephen A. Lybarger, Deputy Comptroller Licensing, Office of the Comptroller of the Currency, Dep't of the Treasury, to Radhi Thayu, Asst. Gen. Counsel, Bank of Am. regarding application to merge BAC Home Loans Servicing, LP . . . into Bank of America, N.A., Application Control No. 2011-ML-12-0037 (June 24, 2011), https://www.occ.treas.gov/topics/licensing/interpretations-and-actions/2011/ca1003.pdf (granting conditional approval to the merger).

[8]Mr. Ali's complaint also cites to 15 U.S.C. § 1681, Compl. at 1, which is the Fair Credit Reporting Act. This court lacks jurisdiction over that Act as well. *Bormes*, 568 U.S. at 15.

now seeks to collect the debt as evidenced by the invoice from Select Portfolio Servicing. The basis for this belief may arise from the serendipitous timing between Mr. Ali's submitting his "Private Bond" to the Treasury and Bank of America's notifying him that he had no mortgage balance with Bank of America after having sold the mortgage to The Bank of New York Mellon. Although Mr. Ali alleges a contract with the United States (*i.e.*, the "Private Bond"), Mr. Ali provides no details about that contract. When evaluating jurisdiction, the court must "accept as true all *undisputed* facts asserted in the plaintiff's complaint and draw all *reasonable* inferences in favor of the plaintiff." *Trusted Integration*, 659 F.3d at 1163 (citing *Henke*, 60 F.3d at 797) (emphasis added). The government disputes the existence of any contract. That contention has merit. The court cannot reasonably infer from the facts provided that such a contract might exist. There is no evidence that the Treasury accepted Mr. Ali's bond, and it would strain credulity to infer that the Treasury may have accepted this self-proclaimed "Private Bond" for $100 billion grounded on a universally rejected theory. *E.g.*, *Gravatt*, 100 Fed. Cl. at 283, 286-87 (discussing how the Tucker Act jurisdiction extends to contracts implied in fact but not in law, and finding no contract between the U.S. government and a plaintiff who requested payment by the Treasury based on HJR 192, and also rejecting debt relief theory under HJR 192); *Estes*, 2015 WL 222137, at *5. A contract requires mutuality of intent, which requires the accepting party to begin performance or make a promise. *See, e.g.*, Restatement (Second) of Contracts §§ 17, 18, 50 (1981). The allegations presented by Mr. Ali fail plausibly to allege the existence of a contract between Mr. Ali and the United States, thus no basis exists to invoke the Tucker Act. In short, Mr. Ali's breach of contract claim fails to state a claim upon which relief can be granted due to the same facial implausibility. *See Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## CONCLUSION

For the reasons stated, the government's motion to dismiss Mr. Ali's complaint is GRANTED. Mr. Ali's complaint shall be DISMISSED without prejudice. The clerk shall enter judgment accordingly.

No costs.

It is so **ORDERED**.

Charles F. Lettow
Senior Judge